Not for Publication

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MILAGROS GARMON** | |
| **Plaintiff,** | **Civil Action No.: 22-5974-ES-JBC** |
| **v.** | **OPINION** |
| **COMMUNITY LOAN SERVICING, LLC; NATIONSTAR MORTGAGE LLC d/b/a RIGHTPATH SERVICING,** | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Plaintiff Milagros Garmon initiated this putative class action against defendants Community Loan Servicing, LLC ("Community Loan") and Nationstar Mortgage LLC ("Nationstar"), doing business as RightPath Servicing (together, "Defendants") alleging violations of sections 1692e and 1692f of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (D.E. No. 1 ("Compl.")). Before the Court is Defendants' joint motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. No. 8 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **DENIED.**

## I. BACKGROUND

### A. Factual Background

On November 17, 2017, Plaintiff purchased property at 520 Purce St., Hillside, New Jersey. (Compl. ¶¶ 6–8). To complete the purchase, Plaintiff executed a promissory note payable to MLB

Residential Lending, LLC in the amount of $166,920, which was subject to a 5.25% fixed interest rate and secured by a mortgage in the property. (*Id.* ¶¶ 7–10). On April 1, 2019, Plaintiff defaulted on the mortgage. (*Id.* ¶ 11). In October 2019, the mortgage was assigned to Lakeview Loan Servicing, LLC ("Lakeview"). (*Id.* ¶ 12). On October 11, 2019, Lakeview filed a foreclosure lawsuit in the Superior Court of New Jersey, Chancery Division, Union County to collect the mortgage debt. (*Id.* ¶ 23; D.E. No. 1 at 17–21, Foreclosure Judgement ("Ex. A")). On February 3, 2022, Lakeview filed a motion for entry of final judgment in the foreclosure suit, and on March 7, 2022, final judgment of foreclosure was entered against Plaintiff in the amount of $215,488.16. (Compl. ¶¶ 24–25; Ex. A).

Plaintiff alleges that Lakeview "retained third party loan servicers to collect the mortgage debt on its behalf." (Compl. ¶13). According to Plaintiff, Lakeview first hired Defendant Community Loan sometime prior to February 2022. (*Id.* ¶¶ 14 & 17). Then, in or around June 2022, Defendant Nationstar took over the servicing of the mortgage from Defendant Community Loan. (*Id.* ¶ 18). Plaintiff alleges that following the entry of the final judgment of foreclosure in March 2022, Defendants Community Loan and Nationstar "continued sending Plaintiff correspondence in connection with the collection of a debt." (*Id.* ¶¶ 30 & 35). Specifically, Plaintiff alleges that Defendant Community Loan sent Plaintiff letters in April and May 2022, attempting to collect on the defaulted mortgage. (*Id.* ¶¶ 31–32; D.E. No. 1 at 24–26, Community Loan letter dated April 18, 2022 ("Ex. C"); D.E. No. 1 at 27–29, Community Loan letter dated May 16, 2022 ("Ex. D") (the "Community Loan Letters")). Under "Account Information," the Community Loan Letters listed an interest rate of 5.25%—the original interest rate on the mortgage. (Exs. C & D). Similarly, Plaintiff alleges that Defendant Nationstar sent Plaintiff letters in June, July, and August 2022, attempting to collect on the defaulted mortgage. (Compl. ¶¶ 35–

37; D.E. No. 1 at 30–32, Nationstar letter dated June 21, 2022 ("Ex. E"); D.E. No. 1 at 33–35, Nationstar letter dated July 10, 2022 ("Ex. F"); D.E. No. 1 at 36–38, Nationstar letter dated August 18, 2022 ("Ex. G") (the "Nationstar Letters") (together with the Community Loan Letters, the "Letters")).  Under "Account Information," the Nationstar Letters also listed an interest rate of 5.25%.  (Exs. E, F & G).

### B.    Procedural History

On October 11, 2022, Plaintiff filed her putative class action Complaint alleging that the Community Loan and Nationstar Letters violate sections 1692e and 1692f of the FDCPA. (Compl.).   Specifically, Plaintiff alleges that the Letters "contain false, deceptive, and/or misleading representations of the sum of money owed on the loan" in violation of section 1692e because they identify the original interest rate on the mortgage—5.25%—instead of the statutory interest rate for a judgment—2.25%[1]—even though the Letters were sent after final entry of the foreclosure judgment.  (Compl. ¶¶ 60 & 62).  For the same reason, Plaintiff alleges that the Letters are "an unconscionable and/or unfair attempt to collect an amount of money not expressly authorized by the loan agreement or otherwise permitted by law" in violation of section 1692f. (*Id.* ¶ 61).  Plaintiff brings three counts including (i) for violations of the FDCPA generally against her as an individual (Count One), (ii) for violations of section 1692e of the FDCPA individually and on behalf of others similarly situated (Count Two), and (iii) for violations of section 1692f of the FDCPA individually and on behalf of others similarly situated (Count Three).[2] (*Id.* ¶¶ 50–74).

---

[1]      Plaintiff attaches a "Notice to the Bar" dated October 4, 2021, which allegedly set the statutory post-judgment interest rate to 2.25% for the year 2022 pursuant to New Jersey Rule 4:42-11(a)(iii).  (*Id.* ¶ 27; D.E. No. 1 at 22–23, Notice to the Bar ("Ex. B")).  Defendants do not dispute that 2.25% is the correct statutory interest rate for a judgment in New Jersey in the year 2022.  (*See* D.E. 8-2 ("Mov. Br.") at 3 ("The judgment awarded Lakeview $215,488.16, and the award is subject to a 2.25% statutory interest rate.")).

[2]      Count Three is mislabeled as "Count IV" in the Complaint but is the third and final count in the Complaint. (*Id.* at 14).

On December 2, 2022, Defendants filed their joint motion to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Rule 12(b)(6).  (Motion).  The motion is fully briefed.  (*See* Mov. Br.; D.E. No. 10 ("Opp. Br."); D.E. No. 13 ("Reply")).

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'"  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002);

and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).[3]

## III.   DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."   15 U.S.C. § 1692(e).   The FDCPA "provides consumers with a private cause of action against debt collectors who fail to comply with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).   Because the FDCPA is a remedial statute, courts "construe its language broadly so as to effect its purposes."   *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) (citing *Brown*, 464 F.3d at 453).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Here, the parties' dispute centers on the third and fourth elements—(i) whether the Community Loan and Nationstar Letters constituted attempts to collect a "debt" and (ii) whether the Letters violate sections 1692e and 1692f of the FDCPA.   The Court addresses each argument in turn.

---

[3]      Defendants ask the Court to take judicial notice of publicly recorded property records and pleadings from the foreclosure action pursuant to Federal Rule of Evidence 201(b)(2).   (Mov. Br. at 4).   Because the Court does not rely on any such documents in rendering its decision, it need not reach this issue.   Further, even if the Court were to consider these documents, they would not impact the Court's decision.

### A.   The Letters Constitute Attempts to Collect a "Debt" Pursuant to the FDCPA

In moving to dismiss Plaintiff's Complaint, Defendants argue that the Community Loan and Nationstar Letters do not constitute attempts to collect a "debt" as that term is defined by the FDCPA because the Letters "did not seek to induce payment at the 5.25% interest rate."  (Mov. Br. at 5–6).  According to Defendants, the Letters were sent to Plaintiff for informational purposes only, to alert her as to what the terms of a loan would be if she were to seek reinstatement of the mortgage.  (*Id.*).  In opposition, Plaintiff argues that "the mortgage statements sent by the Defendants convey information regarding a debt directly to the recipient including the outstanding principal balance, interest rate, a separate reinstatement amount and accelerated amount, and disclosure that a late fee will be assessed if payment is not made by a specified date."  (Opp. Br. at 9).  According to Plaintiff, the Letters were not clearly sent for informational purposes only, but rather appeared, to the least sophisticated debtor, to be attempts to solicit payment.  (*Id.* at 11). For the following reasons, the Court finds that the Community Loan and Nationstar Letters constitute attempts to collect a "debt" as that term is defined by the FDCPA.

The FDCPA defines the term "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."  15 U.S.C. § 1692a(5).  "By its terms then, the FDCPA applies to only consumer debt for personal, family or household purposes and not to commercial debt."  *Affinity Fed. Credit Union v. Allstar Contracting, LLC*, No. 11-2423, 2011 WL 6020588, at *2 (D.N.J. Dec. 1, 2011).

The Third Circuit has explained that "activity undertaken for the general purpose of inducing payment constitutes debt collection activity."  *McLaughlin v. Phelan Hallinan &*

*Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014) (citing *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 265 (3d Cir. 2013)). And, specifically, "communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.* at 245–46. Notably, "a communication need not contain an explicit demand for payment to constitute debt collection activity." *Id.* at 245. Pursuant to this guidance, courts in this district have found mortgage statements to be debt collection attempts for purposes of the FDCPA. *See Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 586–87 (D.N.J. 2016); *Langley v. Statebridge Co. LLC*, No. 14-6366, 2014 WL 7336787, at *3 (D.N.J. Dec. 22, 2014).

Here, as Plaintiff argues (Opp. Br. at 9–11), the Community Loan and Nationstar Letters appear to have been sent with the purpose of inducing payment. To start, the Letters contain "an invoice-like presentation of the amount due," including information regarding "the amount that would have to be paid to satisfy the debt." *McLaughlin*, 756 F.3d at 246. The Community Loan Letters include a box in the top right corner which provides a payment due date, total amount due, and a warning that "[i]f payment is received after [a particular date] a $36.87 late fee will be charged." (Exs. C & D). Further, in the center of the page, under "Explanation of Amount Due" the Community Loan Letters list a "Reinstatement Amount" of $73,987.65 (Ex. C), and $75,962.53 (Ex. D), and an "Accelerated Amount" of $227,493.95 (Ex. C), and $230,171.11 (Ex. D). The Community Loan Letters also include information concerning past payments, transaction activity, and a "Delinquency Notice." (Exs. C & D). Finally, the Community Loan Letters include a paystub at the bottom of the page which can be torn off and sent back with a check for payment, as depicted below:

(Ex. C).  Given these characteristics, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that the Community Loan Letters are attempts to collect on the mortgage debt—going so far as to provide a way for the debtor to make a payment.

The Court reaches the same conclusion with respect to the Nationstar Letters.  Like the Community Loan Letters, the Nationstar Letters include a box in the top right corner which provides a payment due date and a "reinstatement amount due," defined as "the amount you must pay as of the date of this billing statement to bring your loan current."  (Exs. E, F & G).  And they also, in the center of the page under "Explanation of Amounts Due," list a "Reinstatement Amount Due" of $79,093.88, (Ex. E), $80,901.89 (Ex. F), and $83,086.18 (Ex. G), and an "Acceleration Amount Due" of $231,277.70 (Ex. E), $234,025.76 (Ex. F), and $235,217.67 (Ex. G).  In addition, the Nationstar Letters include information concerning past payments and transaction activity.  (Exs. E, F, & G).  Finally, like the Community Loan Letters, the Nationstar Letters include a paystub at the bottom of the page which can be torn off and sent back with a check for payment as depicted below:



(Ex. E).  Given these characteristics, and drawing all reasonable inferences in Plaintiff's favor, the

Court finds that the Nationstar Letters, which also go so far as to provide a way for the debtor to

make a payment, are attempts to collect on the mortgage debt.[4]

---

[4]      Given these extensive characteristics of a debt collection attempt, the Court is not persuaded by Defendants' argument that the Community Loan or Nationstar Letters differ from the communications that were at issue in *Block* or *Langley*.  (Reply at 3–4).  In *Block*, the court found that the mortgage statements which allegedly contained "information concerning the interest owed on [the plaintiff's] loan and the tax and insurance escrows on her loan, and provid[ed] information about the amount due on her loan" were communications in connection with a debt.  *See Block*, 221 F. Supp. at 586–87.  Similarly, here, the Letters contain information concerning the interest rate, as well as the amount due on the loan, amongst other characteristics.  (*See e.g.* Exs. C & E).  And in *Langley*, the court denied the defendant's motion to dismiss despite the defendant's argument that the mortgage statements were not communications in connection with the collection of a debt without analyzing the characteristics of the mortgage statements themselves.  *Langley*, 2014 WL 7336787, at *2–3.

         Nor is the Court convinced by Defendants' reliance on *Vilinksy v. Phelan Hallinan & Diamond, PC.* or *Gregory v. Nationstar Mortgage, LLC.*  (Reply at 2 & 5–6).  In *Vilinsky* and *Gregory*, the courts found that the relevant communications did not constitute debt collection attempts because they did not contain demands for payment.  *See Vilinsky v. Phelan Hallinan & Diamond, PC.*, No. 15-560, 2015 WL 3767494, at *3 (D.N.J. June 16, 2015), *aff'd sub nom. Vilinsky v. Phelan Hallinan & Diamond, PC.*, 640 F. App'x 139 (3d Cir. 2016) (finding that the notice did not constitute a debt collection communication considering that it was "undisputed that the notice [did] not contain an explicit demand for payment . . . . [did] not include information about [the p]laintiff's debt balance or other charges due" and it did not "offer alternatives to payment or explain how to obtain more information about the debt"); *Gregory v. Nationstar Mortg., LLC*, No. 13-6952, 2014 WL 1875167, at *4 (D.N.J. May 9, 2014) (finding that the letters did not constitute debt collection communications considering that the letters did not contain a demand for payment and their purpose was clearly to convey information not induce payment).  In contrast here, as described above, both the Community Loan and Nationstar Letters provided a payment due date and total amount due and also provided a way for Plaintiff to make a payment.

To the extent Defendants rely on the fact that the 5.25% interest rate was provided for in the "Account Information" portion of the Community Loan and Nationstar Letters and argue that it was provided merely to inform Plaintiff of her reinstatement options (Reply at 6) this reliance is misplaced.[5]  As an initial matter, the Letters clearly constitute debt collection attempts regardless of whether all of the information provided on the Letters was made in pursuit of receiving payment on the debt.  And, even if the 5.25% interest rate was provided for merely "informational" purposes regarding the terms of reinstatement, as Defendants contend, pursuant to Third Circuit precedent this still constitutes an attempt to collect a debt because it is provided as an "offer[] of alternatives to default." *McLaughlin*, 756 F.3d at 245–46.  In other words, by providing information to Plaintiff regarding how she could satisfy the debt or ameliorate the negative consequences of her delinquency on the debt through reinstatement, the Community Loan and Nationstar Letters were "part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *Id.*

Defendants' cited case law does not compel the Court to reach a contrary conclusion.  In arguing that the Community Loan Letters and Nationstar Letters do not constitute debt collection attempts, Defendants rely on *Hill v. DLJ Mortgage Capital, Inc.*, No. 15-3083, 2016 WL 5818540, at *9 (E.D.N.Y. Oct. 5, 2016), *aff'd*, 689 F. App'x 97 (2d Cir. 2017).  (Mov. Br. at 6).  In a non-binding decision, the court in *Hill*, sitting in the Eastern District of New York, found that periodic

---

[5]    There appears to be a dispute of fact regarding what the actual amount sought as payment in the Letters reflects.  Defendants argue that the Letters "do not say the foreclosure judgment was accruing interest at 5.25% or that M[s.] Garmon must pay 5.25% interest to satisfy the judgment."  (Mov. Br. at 12).  And they argue that they "in no way sought to collect the judgment through the monthly mortgage statements and certainly did not attempt to collect the judgment at a 5.25% interest rate."  (Reply at 6).  However, Plaintiff argues that "[t]he letters disclosed an inflated interest rate that was not applicable to the judgment debt and *used that interest rate to calculate and request payment of sums for reinstatement and acceleration* that grossly exceeded what was owed under the judgment."  (Opp. Br. at 6 (emphasis added)).  For purposes of this motion, the Court accepts Plaintiff's allegation that the reinstatement and acceleration amounts sought to be collected in the Letters reflects the debt accumulating at a 5.25% interest rate.

mortgage statements sent pursuant to 12 C.F.R. § 1026.41 ("Regulation Z")[6] did not constitute

debt collection attempts under the FDCPA. *Hill*, 2016 WL 5818540, at *9. The court considered

guidance from the Consumer Financial Protection Bureau ("CFPB") on "the interplay between the

FDCPA and certain of the 2013 [Real Estate Settlement Procedures Act ("RESPA")] and Federal

Truth in Lending Act ("TILA") Servicing Final Rules," which provided that a debt collector would

not be liable under the FDCPA for continuing to issue periodic mortgage statements required by

Regulation Z even after a debtor made a "cease communication" request under the FDCPA. *Id.*

at *8. The court reasoned that:

> [i]f a debt collector is not liable under the FDCPA for sending
> communications to a consumer in default of a mortgage loan in
> compliance with the TILA's implementing regulation, Regulation
> Z, including periodic mortgage statements sent pursuant to 12
> C.F.R. § 1026.41, even after the consumer requested that it cease
> further communications with her pursuant to 15 U.S.C. § 1692c(c),
> there is no basis for imposing FDCPA liability upon it for complying
> with Regulation Z absent a "cease communication" notice by the
> consumer.

*Id.* at *9. Finally, the court concluded that the periodic mortgage statements sent in that case were

provided "for informational purposes . . . not in connection with an attempt to collect a debt from

plaintiff for purposes of the FDCPA." *Id.*

Defendants here ask the Court to adopt this reasoning by the Eastern District of New York.

(Mov. Br. at 6; Reply at 4–6). The Court declines to do so. To start, the Court is not convinced

by the Eastern District of New York's application of the CFPB guidance. As Plaintiff argues, the

CFPB bulletin assessed only § 1692c(c) of the FDCPA, which allows a consumer to request a

cease of communications from a creditor. (Opp. Br. at 19). As provided in the bulletin, "the CFPB

concludes that a servicer that is considered a debt collector under the FDCPA with respect to a

---

[6]      Regulation Z is the Federal Truth in Lending Act's ("TILA") implementing regulation. *Hill*, 2016 WL 5818540, at *9.

borrower that provides disclosures to and communicates with the borrower pursuant to the provisions listed above, notwithstanding a 'cease communication' instruction sent by the borrower, is not liable under the FDCPA."  Implementation Guidance for Certain Mortgage Servicing Rules, 10152013 CFPBGUIDANCE, 2013 WL 9001249 (C.F.P.B. Oct. 15, 2013).  That the CFPB guidance indicates that a creditor should not be liable for failing to comply with this cessation request by continuing to send notices mandated by other regulations has no bearing on whether those notices were also sent in an attempt to collect on the debt, nor on whether those notices violate other provisions of the FDCPA.  The Court does not, and will not, interpret the CFPB guidance as indicating that mortgage statements sent pursuant to Regulation Z can never violate the FDCPA.  Further in *Hill*, the court concluded that the periodic mortgage statements at issue were sent "for informational purposes" without an analysis of the characteristics of the statements themselves.  *Hill*, 2016 WL 5818540, at *9.  Here, the Court has already concluded that the periodic mortgage statements sent by Defendants clearly constitute debt collection attempts under the FDCPA, given the characteristics described above.  As such, Defendants' reliance on *Hill* is unavailing.

For the foregoing reasons, the Court finds that the Community Loan and Nationstar Letters constitute attempts to collect a "debt" as that term is defined by the FDCPA.

### B. Violations of 15 U.S.C. §§ 1692e & 1692f

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[t]he false representation of . . . the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692e(10) imposes liability for "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a

consumer." *Id.* § 1692e(10).  "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Dotson v. Nationwide Credit, Inc.*, 828 F. App'x 150, 153 (3d Cir. 2020) (quoting *Brown*, 464 F.3d at 455).  Further, section 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  This includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  *Id.* § 1692f(1).

Plaintiff alleges that the Community Loan and Nationstar Letters "contain false, deceptive, and/or misleading representations of the sum of money owed on the loan" and "are an unconscionable and/or unfair attempt to collect an amount of money not expressly authorized by the loan agreement or otherwise permitted by law" in violation of sections 1692e and 1692f, respectively.  (Compl. ¶¶ 60–61).  Specifically, Plaintiff alleges that the Letters sought to collect payment of the principal amount of her mortgage plus interest at a rate of 5.25%—the original interest rate associated with the loan.  (*Id.* ¶¶ 9 & 31–38).  However, after the final judgment had been entered against Plaintiff in the foreclosure suit, Plaintiff alleges that pursuant to the New Jersey merger doctrine, her mortgage merged with the final judgment of foreclosure and ceased to exist, so the 5.25% interest rate was no longer applicable.  (*Id.* ¶ 29).  Rather, Plaintiff alleges that after the final judgment was entered, the "U.S. Bank became a judgment creditor, and was thus only entitled to the interest rate pursuant to [New Jersey Rule] 4:42-11"—or 2.25% for the year 2022—because the judgment extinguished the underlying mortgage.  (*Id.* ¶¶ 27 & 29).  As such, according to Plaintiff, Defendants' Letters sought "to collect interest in excess of the sum permitted under New Jersey R. 4:42-11(f)."  (*Id.* ¶ 62).

In moving to dismiss these allegations, Defendants argue that they could not have violated FDCPA section 1692e or 1692f because they were required to send monthly mortgage statements to Plaintiff pursuant to Regulation Z, and those statements had to include the current interest rate in effect for the mortgage.  (Mov. Br. at 8–9).  According to Defendants, the requirements of Regulation Z continued even after entry of the final judgment of foreclosure, and, notwithstanding the merger doctrine, the mortgage continued to exist following the foreclosure judgment and prior to the judicial sale of the property.  (*Id.* at 8–12).  Thus, Defendants argue that they were obligated to send the Community Loan and Nationstar Letters and to include the 5.25% interest rate, which was the accurate interest rate associated with the mortgage, and they cannot be held liable under the FDCPA for meeting these statutory obligations.  (*Id.* at 13).  For the following reasons, the Court disagrees.

### i.      Plaintiff's Mortgage Merged with the Foreclosure Judgment

To start, it is clear that, pursuant to the New Jersey merger doctrine, Plaintiff's mortgage merged with the final judgment of foreclosure and ceased to exist at that point.  Under New Jersey law "[i]t is well settled that the mortgage merges into the final judgment of foreclosure." *Customers Bank v. Reitnour Inv. Properties, LP*, 181 A.3d 1038, 1045 (N.J. Super. Ct. App. Div. 2018) (quoting *Washington Mut., FA v, Wroblewski*, 933 A.2d 32, 35 (N.J. Super. Ct. Ch. Div. 2007)); *In re Goione*, 595 B.R. 477, 483 (Bankr. D.N.J 2019) ("As a general principal, it is elementary that a judgment settles everything involved in the right to recover . . . in the context of a foreclosure action, a mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished, at which point it ceases to exist.") (citing *In re Stendardo*, 991 F.2d 1089, 1094–95 (3d Cir. 1993), *as amended* (June 21, 1993)).  "As a result, upon entry of a foreclosure judgment, all contractual rights under the mortgage are merged into the foreclosure judgment."

*Customers Bank*, 181 A.3d at 1045 (quoting *Washington Mut., FA*, 933 A.2d at 35). "Thereafter, a mortgage can no longer serve as a basis for determining the obligations of the parties. Instead, litigants must look to the judgment." *In re Goine*, 595 B.R. at 483. As to interest rates specifically, "[b]ankruptcy courts have consistently held that the doctrine of merger entitles a postjudgment mortgagee to the legal rate of interest rather than the rate specified in the mortgage, because the mortgage's terms providing for the contractual interest rate no longer exist." *Id.*

Though there is a "presumption of merger," New Jersey law recognizes exceptions to the merger doctrine. *See Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1117 (N.J. 2011). For example, the presumption "can be overcome if it can be shown that the parties had a contrary intent." *Id.* (citing *Anthony L. Petters Diner, Inc. v. Stellakis*, 493 A.2d 1261, 1265 (App. Div. 1985)); *In re A&P Diversified Techs. Realty, Inc.*, 467 F.3d 337, 342 (3d Cir. 2006). And sometimes equitable principles may warrant an exception to the merger doctrine. However, as numerous courts have held, "the general rule is that a loan no longer exists after a default leads to *the entry of a final judgment.*" *Customers Bank*, 181 A.3d at 1045 (quoting *Gonzalez*, 25 A.3d at 1117) (emphasis added) (cleaned up); *In re Goione*, 595 B.R. at 484 ("Pursuant to the merger doctrine, the mortgages and their accompanying interest rates ceased to exist *upon entry of the foreclosure judgment.*") (emphasis added). Given this well-settled law, it is clear that Plaintiff's mortgage merged with the final judgment of foreclosure when the judgment was entered, thus extinguishing the mortgage's original interest rate. And based on the record currently before the Court, there is no indication that the parties intended to contract otherwise or that any equitable principles warrant an exception to the merger doctrine in this case. Defendants' arguments to the contrary are unavailing.

*First*, Defendants rely on *Mannarino v. Ocwen Loan Servicing, LLC*, No. 17-2564, 2018 WL 1526558, at *4–5 (D.N.J. Mar. 28, 2018) for the proposition that a mortgage cannot be extinguished after entry of the final judgment of foreclosure but prior to the sheriff's sale of the property. (Mov. Br. at 9–10). The Court finds *Mannarino* distinguishable. In *Mannarino*, the court was considering whether the defendant, a loan servicing company which "serviced [the p]laintiff's mortgage loan and was responsible for assessing [her] loss mitigation applications, and other mortgage relief options . . . to avoid a judicial sale of the property" had violated RESPA and 12 C.F.R. § 1024.41 ("Regulation X").[7] 2018 WL 1526558, at *1. The court found that certain obligations connected with the loan at issue in that case continued past the foreclosure judgment because the sheriff's sale of the property had not yet taken place. *Id.* at *4–5. More specifically, the court held that the defendant was still a "servicer" within the meaning of RESPA despite the fact that the final judgment of foreclosure had been entered. *Id.* However, in making this determination, the court did not find that the original mortgage still existed or had not merged with the final judgment. Rather, the court explained that the defendant's "'merger' theory lacks merit *under the circumstances*," i.e., considering that Regulation X has particular provisions which "suggest a servicer has an obligation to the [p]laintiff at least until the judicial sale is completed." *Id.* at *5 (emphasis added); *see Lonconsole v. Wells Fargo Mortgage*, No. 17-8362, 2018 WL 3158816, at *6 (D.N.J. June 28, 2018) (considering that a provision of Regulation X, "the loss mitigation procedure section, appears to distinguish between a final judgment and a foreclosure sale"). In contrast, as Plaintiff points out (Opp. Br. at 17–18), Regulation Z—invoked by Defendants here and associated with the TILA—makes no such reference to any continuing obligations of the loan servicer. As such, the fact that Regulation X may contain obligations which

---

[7]     Regulation X is RESPA's implementing regulation. *Hill*, 2016 WL 5818540, at *1.

continue past the foreclosure judgment, does not indicate that the mortgage is not extinguished under the merger doctrine.

Further, other courts in this Circuit have disagreed with the reasoning in *Mannarino* distinguishing between a final judgment of foreclosure and the sale of the property.  For example, in *Ahmed v. Wells Fargo Bank NA*, the district court explained that though "[a]t least two New Jersey federal courts have . . . concluded that a plaintiff can still bring a claim under RESPA when there has been a foreclosure judgment but not a foreclosure sale" that court "disagrees with that interpretation" because "[a]s a matter of law, the mortgage loan ceases to exist following the judgment of foreclosure."  432 F. Supp. 3d 556, 563–64.  Overall, it appears that there is a district split on the issue of whether RESPA continues to apply to mortgages after issuance of a foreclosure judgment and prior to a foreclosure sale in light of New Jersey's merger doctrine.  *See Lonconsole*, 2018 WL 3158816, at *5.  The Court need not fray into this split for the case at bar, particularly since RESPA is not at issue in this case.  But given the unsettled nature of this dispute, the Court is hesitant to rely on *Mannarino* as conclusive authority that in New Jersey a mortgage continues to exist during the time between a foreclosure judgment and a foreclosure sale despite the merger doctrine, as Defendants urge it to do.  In fact, even in the context of RESPA many courts have found just the opposite.  *See Gonzalez v. Wells Fargo Home Mortg.*, No. 18-11405, 2019 WL 4196142, at *5 (D.N.J. July 25, 2019) (collecting cases) (finding that, following "the weight of authority in this District" the plaintiff's "mortgage loan was extinguished when final judgment was entered").  Accordingly, the Court is not convinced by Defendants' arguments that in light of *Mannarino* and Regulation X, the "loan and loan account must exist" after a final entry of foreclosure judgment is entered, but before a sheriff's sale of the property is completed.  (Reply at

11; *see also id.* at 8 (arguing that Regulation X "requires servicers [to] continue servicing a loan until the judgment is satisfied through the foreclosure sale proceeds")).[8]

*Second*, Defendants argue that because the mortgage loan can be reinstated, it must still exist. (Mov. Br. at 10–11). The parties agree that the legal right to reinstate a mortgage or cure the default is lost as of the entry of final judgment of foreclosure. (Opp. Br. at 12 & 14–15; Reply at 11); N.J.S.A. §2A:50-58(a)(1) (requiring lender to notify debtor "that upon entry of final judgment, the debtor shall lose the right, provided pursuant to section 5 of this act, to cure the default"). Nevertheless, Defendants argue that the provisions of Regulation Z allowing for reinstatement of a mortgage loan through a bankruptcy plan or otherwise show that "[t]he loan account and contractual interest rate . . . must still exist after foreclosure judgment . . . ." (Mov. Br. at 11). The Court disagrees. The fact that the mortgage could be reinstated does not necessarily mean that it continued to exist past the final entry of foreclosure judgment. Indeed, the Court is instructed by the Third Circuit's reasoning in *In re Stendardo* on this point. There, the Third Circuit considered persuasive a Pennsylvania Bankruptcy case,[9] *In re Presque Isle Apartments*, 112 B.R. 744, 747 (Bankr. W.D. Pa. 1990), where the court determined that, because of the merger

---

[8]     For this reason, the Court is also not persuaded by Defendants' argument in reply that the "CFPB regulations require servicers to continue sending mortgage statements that list the contractual interest rate post-judgment." (Reply at 7 (citing 12 C.F.R. § 1026.41 (Regulation Z))). Section 1026.41 (Regulation Z) says no such thing, and in fact, provides no information regarding a servicer's continuing obligations post-judgment. And as stated above, it is not clear whether Regulation X has any continuing obligations post-judgment and pre-sale. The Court is sympathetic to Defendants' concern with the apparent contradiction between the New Jersey merger doctrine and their obligations pursuant to the regulations. The Court acknowledges this tension, but notes that this is an issue better addressed by the legislature. Until such time, the Court is constrained by the clear precedent under the New Jersey merger doctrine.

[9]     Though the bankruptcy court in that case was considering the merger doctrine under Pennsylvania law, the merger doctrines in Pennsylvania and New Jersey similarly provide that "in the context of a foreclosure action, a mortgage is merged into the final judgment of foreclosure and the mortgage contract is extinguished, at which point it ceases to exist." *In re Goione*, 595 B.R. at 483 (citing *In re Stendardo*, 991 F. 2d at 1095); *id.* (explaining that the Third Circuit in *Stendardo* was considering the application of Pennsylvania law, but the Third Circuit proffered the same principle when applying New Jersey law in *A&P Diversified*, 467 F. 3d at 343). Accordingly, the Court finds the analysis of the application of the Pennsylvania merger doctrine instructive here.

doctrine, "the creditor was entitled to the higher interest rate specified in the mortgage up until the entry of the judgment . . . After the judgment was entered, however, the mortgage merged into the judgment, and the creditor was entitled only to the lower legal rate of interest. . . .  This low rate remained in effect . . . until the parties agreed to revive the mortgage . . . thereby reinstating the pre-existing terms and conditions" including the higher interest rate. *In re Stendardo*, 991 F.2d at 1095 (citing *Presque Isle*, 112 B.R. at 746–47).  Thus, the possibility, and even the very act of reinstatement of the original loan, did not alter the fact that the mortgage and its terms, including its interest rate, were not in effect during the period following the final judgment of foreclosure and prior to reinstatement in *Presque Isle*, which the Third Circuit found persuasive in determining the impact of the merger doctrine on a mortgage's rate of interest. *Id.*.  Accordingly, the Court finds that the possibility of reinstatement does not alter the well-settled rule in New Jersey that a mortgage and its terms are extinguished upon entry of a final judgment of foreclosure.

> **ii.** **Any Periodic Mortgage Statement Had to Comply with the FDCPA**

Defendants additionally argue that they cannot be held liable for continuing to issue mortgage statements with the original interest rate for the loan because they were required to do so pursuant to Regulation Z.  (Mov. Br. at 8).  The Court is not convinced.  Regulation Z provides that "[a] servicer of a transaction . . . shall provide the consumer, for each billing cycle, a periodic statement meeting the requirements of paragraphs (b), (c), and (d) of this section."  12 C.F.R. § 1026.41(a)(2).  Regulation Z specifies a number of disclosures that must be included in the statements, including "[t]he current interest rate in effect for the mortgage loan." *Id.* § 1026.41(d)(7)(ii).  However, it is not clear that these obligations continue after entry of final judgment of foreclosure.  Regulation Z is itself silent on this issue—which Defendants take to imply that the obligations of Regulation Z continue past a foreclosure judgment.  (Mov. Br. at 8)

("Regulation Z does not state that its requirements cease once a foreclosure judgment enters."); Reply at 7 (The "regulations require servicers to continue sending mortgage statements that list the contractual interest rate post-judgment.")).  But Regulation Z's silence on this issue could just as easily suggest that its obligations end when the mortgage ceases to exist which, under the New Jersey merger doctrine, occurs on the date of entry of the final judgment of foreclosure.  In fact, this interpretation is entirely consistent with the requirement of Regulation Z that a mortgage statement contain the "current interest rate *in effect* for the mortgage loan."   12 C.F.R. § 1026.41(d)(7)(ii) (emphasis added).   Following entry of a final judgment of foreclosure, the original interest rate on the mortgage loan is no longer "in effect."

Nonetheless, as Plaintiff argues (Opp. Br. at 15–17), irrespective of whether Defendants' obligation to provide periodic mortgage statements continued between final entry of foreclosure and the judicial sale of the property, any mortgage statements issued by Defendants had to comply with the FDCPA.  The Court finds the decision in *In re Bernadin*, 610 B.R. 787, 803–4 (Bankr. E.D. Pa. 2019) instructive on this point.   In *Bernadin*, the court was considering the impact of the merger doctrine on the obligations of a creditor in filling out a bankruptcy form.   The court acknowledged that Part 2 of the form requires the creditor to provide the "principle balance" owed, which, "might be read superficially as requiring a creditor that holds a foreclosure judgment to calculate its total claim in its proof of claim . . . as if no judgment had been entered—even in a jurisdiction in which the merger doctrine applies[.]"   *In re Bernadin*, 610 B.R. at 803.   In other words, the court had to determine whether the form required a creditor to supply a "principal balance" that was based upon the original mortgage, even if the original mortgage had been extinguished by a final judgment of foreclosure pursuant to the merger doctrine.   The court reasoned that, "that cannot possibly be what Part 2 of the Form requires."  *Id.*   Rather, the court

explained that, "it is possible for a debt collector of a residential mortgage creditor to complete Part 2 of Form 410A accurately when the creditor's mortgage has merged into a prepetition foreclosure judgment . . . by treating the foreclosure judgment amount as the 'principal balance' amount . . . ." *Id.*

In essence, the court in *Bernadin* was faced with a similar quandary as this Court is here— what is the impact of the merger doctrine on other statutory obligations premised on the underlying mortgage? As the *Bernadin* court found, the Court cannot act as if the merger doctrine does not exist. Rather, it must take into account, in accordance with well-settled precedent, that the mortgage has merged with the final judgment of foreclosure and has been extinguished. Accordingly, regardless of whether Defendants had continuing obligations to send periodic mortgage statements, those statements had to comply with the FDCPA by portraying accurate information, including an accurate interest rate, taking into consideration that the mortgage had merged with the final judgment of foreclosure.

### iii.      Plaintiff Has Adequately Alleged that the Letters Violated the FDCPA

Here, Plaintiff has adequately alleged that the Community Loan and Nationstar Letters did not comply with the FDCPA. In determining whether a debt collection letter violates the FDCPA, the Court applies a "least sophisticated debtor standard." "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting *Brown*, 464 F.3d at 453) (alterations in original). "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen*, 791 F.3d at 418 (internal citations and quotations omitted) (cleaned up). It does not, however, subscribe to "bizarre or idiosyncratic interpretations of collection notices." *Hopkins v.*

*Collecto, Inc.*, 994 F.3d 117, 122 (3d Cir. 2021) (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000)).

Under the least sophisticated debtor standard, a debt collector violates the FDCPA when its communication misleads the recipient into thinking that he or she has a legal obligation to pay a time-barred debt, *see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 428 (3d Cir. 2018), or "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Wilson*, 225 F.3d at 354. Furthermore, the least sophisticated debtor standard is objective, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*, 791 F.3d at 419 (emphasis in original). In the Third Circuit, whether a collection letter would mislead the least sophisticated debtor is a question of law that may be resolved in a Rule 12(b)(6) motion. *Szczurek v. Pro. Mgmt. Inc.*, 627 F. App'x 57, 60 (3d Cir. 2015) ("Whether language in a collection letter violates the FDCPA is a question of law."); *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887, at *3 (D.N.J. July 23, 2008); *Wilson*, 225 F.3d at 353 n.2.

One plausible interpretation of the Community Loan and Nationstar Letters by a least sophisticated debtor is that the Letters were attempts to seek payment on the original mortgage, pursuant to the original terms of the mortgage, including the 5.25% interest rate. This interpretation could be made from the characteristics of the Letters, including but not limited to the fact that the Letters provide an "amount due," a due date, a method for making payment of the amount due, and, for the Community Loan Letters, a threat that the amount will be subject to a late charge if payment is not timely; that the Letters only provide one interest rate—5.25%—and do not provide any information regarding whether the mortgage loan is currently accruing at this interest rate; that the Letters do not indicate how the "amount due" is calculated or at what interest rate it is accruing, though the amount increases over time in each Letter; that the Letters nowhere

mention the foreclosure judgment; and that the Letters do not provide that they are being sent solely for the purpose of providing information concerning the terms of any reinstated loan.  (Exs. C–E).  In short, a plain reading of the Letters could lead a least sophisticated debtor to conclude that the Letters were seeking to collect payment on the original mortgage that was accruing at a 5.25% interest rate.  This interpretation is plausibly false—as the mortgage had been extinguished by the final judgment of foreclosure, Defendants could only seek payment on the final judgment, which was subject to the statutorily set interest rate of 2.25%, rather than the original 5.25% interest rate.  As such, Plaintiff has set forth a plausible claim under the FDCPA.

Defendants' arguments to the contrary are unavailing.  Even if Defendants were still obligated to provide mortgage statements pursuant to Regulation Z, this does not mean, as Defendants argue, that they "cannot violate FDCPA sections 1692e or 1692f" by including the "interest rate specified in the note after a foreclosure judgment."  (Mov. Br. at 8).  Regulation Z, specifically section 1026.41(d)(2)(i), provides that "if a mortgage loan has multiple payment options, a breakdown of each of the payment options along with information on whether the principal balance will increase, decrease, or stay the same for each option listed" is required.  12 C.F.R. § 1026.41(d)(2)(i).  Defendants argue that the Letters "do not say the foreclosure judgment was accruing interest at 5.25% or that [Plaintiff] must pay 5.25% interest to satisfy the judgment," rather the Letters referenced the 5.25% interest rate in the "Account Information" box to alert Plaintiff to the terms the mortgage would be subject to were she to reinstate it.  (Mov. Br. at 12–13).  However, it is not clear from the Letters themselves that the 5.25% interest rate is listed merely so that Plaintiff would know the interest rate that would apply should she seek reinstatement of her loan.  (*See id.* at 8 & 11).  Rather, a least sophisticated debtor could read the Letters as providing the actual interest rate at which interest was accruing on Plaintiff's existing

debt.   As already discussed, this interpretation is false, given that Plaintiff's debt was in fact accruing at the statutorily set rate for a judgment.   Regardless of whether Defendants were obligated to provide the mortgage statements or to include the 5.25% interest rate so that Plaintiff could make an informed reinstatement decision, Defendants still had to comply with the FDCPA, including by providing accurate information.

At this point in the litigation, Plaintiff has at least plausibly alleged that a least sophisticated debtor could read the mortgage statements as informing her that her mortgage was continuing to accrue interest at 5.25%, and as attempts to collect on that debt.   Because the mortgage ceased to exist at the time of the foreclosure judgment, this interpretation is plausibly false.   Though Defendants have proffered a different interpretation—that the Letters were informing Plaintiff of her reinstatement options and the 5.25% interest rate was just reflecting the interest rate her reinstated loan would be subject to—this is not the only plausible interpretation of the Letters.   It is not Defendants' intent in sending the Letters that determines whether an FDCPA violation has occurred, but the interpretation of a least sophisticated debtor.   Because Plaintiff has adequately alleged that the Letters are subject to one or more interpretations, at least one of which is false, her FDCPA claim pursuant to section 1692e can proceed as pled.   Similarly, because Plaintiff has adequately alleged that the Letters constituted attempts to collect an amount not permitted by law, her FDCPA claim pursuant to section 1692f can proceed as pled.

**IV.     CONCLUSION**

Accordingly, the Court finds that the Community Loan and Nationstar Letters constitute debt collection attempts pursuant to the FDCPA.  And the Court finds that Plaintiff has adequately alleged that the Letters violated FDCPA sections 1692e and 1692f.  For the foregoing reasons, Defendants' motion is **DENIED.**   An appropriate Order accompanies this Opinion.

**Dated:** February 8, 2024

**Hon. Esther Salas, U.S.D.J.**